# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| MICHELLE BURTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:19CV698 |
| | ) | |
| ANDREW M. SAUL, | ) | |
| Commissioner of Social | ) | |
| Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Plaintiff, Michelle Burton, brought this action pursuant to the Social Security Act (the "Act") to obtain judicial review of a final decision of Defendant, the Commissioner of Social Security, denying Plaintiff's claim for Disability Insurance Benefits ("DIB"). (Docket Entry 1.) Defendant has filed the certified administrative record (Docket Entry 8 (cited herein as "Tr. __")), and both parties have moved for judgment (Docket Entries 11, 15; see also Docket Entry 12 (Plaintiff's Memorandum); Docket Entry 16 (Defendant's Memorandum)). For the reasons that follow, the Court should enter judgment for Defendant.

## I.  PROCEDURAL HISTORY

Plaintiff applied for DIB, alleging a disability onset date of September 30, 2015.  (Tr. 186-87.)[1]  Upon denial of that application initially (Tr. 78-90, 106-09) and on reconsideration (Tr. 91-105, 115-18), Plaintiff requested a hearing de novo before an Administrative Law Judge ("ALJ") (Tr. 121-23).  Plaintiff, her attorney, and a vocational expert ("VE") attended the hearing.  (Tr. 38-77.)  The ALJ subsequently ruled that Plaintiff did not qualify as disabled under the Act.  (Tr. 14-33.)  The Appeals Council thereafter denied Plaintiff's request for review (Tr. 1-6, 181-85), thereby making the ALJ's ruling the Commissioner's final decision for purposes of judicial review.

In rendering that decision, the ALJ made the following findings:

> 1.  [Plaintiff] meets the insured status requirements of the . . . Act through December 31, 2020.
>
> 2.  [Plaintiff] has not engaged in substantial gainful activity since October 30, 2015, the alleged onset date.
>
> . . .

---

[1] For reasons that the record does not elucidate, during the hearing, the ALJ asked Plaintiff's counsel if "October 30, 2015" (rather than September 30, 2015) constituted Plaintiff's alleged onset date, and Plaintiff's attorney responded affirmatively without objection or comment by Plaintiff.  (Tr. 41-42; see also Tr. 186 (Plaintiff's DIB application listing "September 30, 2015" as the alleged onset date), 216 (short-term disability medical review form on which Plaintiff's neuropsychologist listed "9/30/2015" as the date of disability onset).)  The ALJ thereafter utilized October 30, 2015 as the alleged onset date in adjudicating Plaintiff's benefits claim (see Tr. 17, 19, 32) and thus this Recommendation will also use October 30, 2015 as the onset date.

3.    [Plaintiff] has the following severe impairments: asthma, migraines/headaches, occipital neuralgia, neuropathy, post-concussion syndrome, neurocognitive disorder, depressive disorder, and anxiety disorder.

. . .

4.    [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

. . .

5.    [Plaintiff] has the residual functional capacity to perform medium work . . . except frequently climb ramps or stairs; occasionally climb ladders, ropes or scaffolds; occasionally balance; frequently stoop, kneel, crouch, and crawl; frequently reach, reach overhead, handle objects, and finger with the right upper extremity; no exposure to very loud noise; occasional exposure to loud noise; occasional exposure to vibration; frequent exposure to pulmonary irritants such as dust, odors, fumes, and gases and to poorly ventilated areas; and occasional exposure to unprotected heights, hazardous machinery or hazardous moving mechanical parts. [Plaintiff]'s work is limited to simple, routine and repetitive tasks but not at a production rate pace; simple, work-related decisions; occasional interaction with the public; and frequent interaction with coworkers and supervisors. [Plaintiff] would be off task no more than 10% of the time in an eight-hour workday, in addition to normal breaks (with normal breaks defined as a 15-minute morning and afternoon break and a 30-minute lunch break).

. . .

6.    [Plaintiff] is unable to perform any past relevant work.

. . .

10. Considering [Plaintiff's] age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform.

3

. . .

11. [Plaintiff] has not been under a disability, as
defined in the . . . Act, from October 30, 2015, through
the date of this decision.

(Tr. 19-32 (bold font and internal parenthetical citations
omitted).)

## II.  DISCUSSION

Federal law "authorizes judicial review of the Social Security
Commissioner's denial of social security benefits."  Hines v.
Barnhart, 453 F.3d 559, 561 (4th Cir. 2006).  However, "the scope
of . . . review of [such a] decision . . . is extremely limited."
Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981).  Plaintiff has
not established entitlement to relief under the extremely limited
review standard.

### A.  Standard of Review

"[C]ourts are not to try [a Social Security] case de novo."
Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).  Instead, "a
reviewing court must uphold the factual findings of the ALJ
[underlying the denial of benefits] if they are supported by
substantial evidence and were reached through application of the
correct legal standard."  Hines, 453 F.3d at 561 (internal brackets
and quotation marks omitted).

"Substantial evidence means 'such relevant evidence as a
reasonable mind might accept as adequate to support a conclusion.'"
Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (quoting

4

<u>Richardson v. Perales</u>, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." <u>Mastro v. Apfel</u>, 270 F.3d 171, 176 (4th Cir. 2001) (internal brackets and quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." <u>Hunter</u>, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the [C]ourt should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ, as adopted by the Social Security Commissioner]." <u>Mastro</u>, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Social Security Commissioner] (or the ALJ)." <u>Id.</u> at 179 (internal quotation marks omitted). "The issue before [the Court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." <u>Craig v. Chater</u>, 76 F.3d 585, 589 (4th Cir. 1996).

When confronting that issue, the Court must take note that "[a] claimant for disability benefits bears the burden of proving a disability," <u>Hall v. Harris</u>, 658 F.2d 260, 264 (4th Cir. 1981),

and that, in this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months,'" id. (quoting 42 U.S.C. § 423(d)(1)(A)).[2] "To regularize the adjudicative process, the Social Security Administration [('SSA')] has . . . promulgated . . . detailed regulations incorporating longstanding medical-vocational evaluation policies that take into account a claimant's age, education, and work experience in addition to [the claimant's] medical condition." Id. "These regulations establish a 'sequential evaluation process' to determine whether a claimant is disabled." Id. (internal citations omitted).

This sequential evaluation process ("SEP") has up to five steps: "The claimant (1) must not be engaged in 'substantial gainful activity,' i.e., currently working; and (2) must have a 'severe' impairment that (3) meets or exceeds the 'listings' of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity

_____

[2] The Act "comprises two disability benefits programs. [DIB] . . . provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program . . . provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

to (4) perform [the claimant's] past work or (5) any other work." Albright v. Commissioner of Soc. Sec. Admin., 174 F.3d 473, 475 n.2 (4th Cir. 1999).[3]  A finding adverse to the claimant at any of several points in the SEP forecloses an award and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied.  The second step determines if the claimant is 'severely' disabled.  If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first three steps, "the claimant is disabled." Mastro, 270 F.3d at 177.  Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's [RFC]."  Id. at 179.[4]  Step four then requires the ALJ to assess whether, based on that RFC, the

---

[3] "Through the fourth step, the burden of production and proof is on the claimant.  If the claimant reaches step five, the burden shifts to the [government] . . . ."  Hunter, 993 F.2d at 35 (internal citations omitted).

[4] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations."  Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)).  The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265.  "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain)."  Hines, 453 F.3d at 562-63.

7

claimant can "perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, whereupon the ALJ must decide "whether the claimant is able to perform other work considering both [the RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.[5]

## B. Assignments of Error

Plaintiff asserts that the Court should overturn the ALJ's finding of no disability on these grounds:

1) "[t]he ALJ failed to adequately account for the vocationally limiting effects of Plaintiff's migraine headaches in the RFC" (Docket Entry 12 at 4 (bold font and single-spacing omitted));

---

[5] A claimant thus can qualify as disabled via two paths through the SEP. The first path requires resolution of the questions at steps one, two, and three in the claimant's favor, whereas, on the second path, the claimant must prevail at steps one, two, four, and five. Some short-hand judicial characterizations of the SEP appear to gloss over the fact that an adverse finding against a claimant on step three does not terminate the analysis. See, e.g., Hunter, 993 F.2d at 35 ("If the ALJ finds that a claimant has not satisfied any step of the process, review does not proceed to the next step.").

8

2) "[t]he ALJ failed to address the material conflicts between the opinions of the [s]tate [a]gency physicians and [the] RFC determination" (id. at 8 (bold font and single-spacing omitted)); and

3) "[t]he ALJ failed to adequately evaluate the long-term disability decision of the North Carolina Retirement System [('NCRS')]" (id. at 11 (bold font and single-spacing omitted)).

Defendant contends otherwise and seeks affirmance of the ALJ's decision. (See Docket Entry 16 at 10-20.)

### 1. Migraine Headaches

In Plaintiff's first assignment of error, she maintains that "[t]he ALJ failed to adequately account for the vocationally limiting effects of Plaintiff's migraine headaches in the RFC." (Docket Entry 12 at 4 (bold font and single-spacing omitted).) More specifically, Plaintiff asserts that both her testimony and the relevant record evidence show "that she would likely miss multiple days of work per month on average due to her migraine headaches and associated symptoms" (id. at 5-6), but that "[t]he ALJ did not include missed days of work in his RFC determination" (id. at 6). Plaintiff deems the ALJ's alleged error in that regard "significant," because the VE testified that "no employer would tolerate an employee being consistently absent for more than one day a month" and "that off-task time in excess of ten percent of the work day would not be tolerated." (Id. at 8 (citing Tr. 74).)

9

Plaintiff urges the Court to either "reverse[] for an award of benefits pursuant to the VE's testimony," or "remand[] for further proceedings so that the ALJ can make findings regarding absences in the RFC based upon [Plaintiff]'s well documented migraine headaches." (Id.)

RFC measures the most a claimant can do despite any physical and mental limitations. Hines, 453 F.3d at 562; 20 C.F.R. § 404.1545(a). An ALJ must determine a claimant's exertional and non-exertional capacity only after considering all of a claimant's impairments, as well as any related symptoms, including pain. See Hines, 453 F.3d at 562–63; 20 C.F.R. § 404.1545(b). The ALJ then must match the claimant's exertional abilities to an appropriate level of work (i.e., sedentary, light, medium, heavy, or very heavy). See 20 C.F.R. § 404.1567. Any non-exertional limitations may further restrict a claimant's ability to perform jobs within an exertional level. See 20 C.F.R. § 404.1569a(c). An ALJ need not discuss every piece of evidence in making an RFC determination. See Reid v. Commissioner of Soc. Sec., 769 F.3d 861, 865 (4th Cir. 2014) (citing Dyer v. Barnhart, 395 F.3d 1206, 1211 (11th Cir. 2005)). However, "the ALJ must both identify evidence that supports his [or her] conclusion and build an accurate and logical bridge from that evidence to [that] conclusion." Woods v. Berryhill, 888 F.3d 686, 694 (4th Cir. 2018) (internal emphasis, quotation marks, and brackets omitted).

The ALJ here sufficiently explained how he accommodated Plaintiff's migraine headaches in the RFC determination. (<u>See</u> Tr. 22-31). The ALJ first provided a comprehensive review of the medical evidence of record (<u>see</u> Tr. 23-28), which included the following, pertinent findings:

- At a neurocognitive evaluation in January and February 2015, although Plaintiff reported shooting pains lasting seconds in her head and jaw, "[h]er more general headaches had improved" (Tr. 24; <u>see also</u> Tr. 360);

- At a September 2015 neurocognitive examination, Plaintiff relayed that "[s]he had gotten relief from her headaches after an occipital block" (Tr. 24; <u>see also</u> Tr. 366);

- Plaintiff indicated at an October 2015 neurology appointment that an occipital block at her last office visit had provided "resolution of her headaches for nearly one month" (Tr. 25; <u>see also</u> Tr. 347);

- At a follow-up visit to her neurologist in December 2015, Plaintiff "reported ongoing daily headaches but at a reduced severity such that she only required abortive medication occasionally" (Tr. 25; <u>see also</u> Tr. 352) and, in February 2016, her headaches remained "stable on gabapentin" and only "occasionally required higher doses" (Tr. 25; <u>see also</u> Tr. 476);

- Although Plaintiff reported in July 2016 that occipital nerve blocks and trigger point injections no longer adequately relieved her headaches (<u>see</u> Tr. 25; <u>see also</u> Tr. 577), a provider with the North Carolina Headache Institute evaluated Plaintiff in May and July 2017 and recommended Botox injections (<u>see</u> Tr. 26; <u>see also</u> Tr. 588-98), and Plaintiff indicated that Botox reduced the frequency and severity of her headaches and that "her headaches could be easily aborted with medication" (<u>see</u> Tr. 27; <u>see also</u> Tr. 547);

11

- Plaintiff continued to report improvement in the frequency and severity of her headaches on Botox at follow-up neurologist appointments in January and April 2018 (see Tr. 28; see also Tr. 535-36, 542-43); and

- Plaintiff did not visit the emergency room to treat her migraine headaches because she remained able to control them adequately at home (see Tr. 23; see also Tr. 64).

The ALJ also evaluated Plaintiff's subjective complaints of migraine headache symptoms, expressly discussing her testimony that "she has 15 to 16 migraines per month, despite taking Neurontin as a preventative medication and Botox injections, that help some" (Tr. 22; see also Tr. 51), that "she gets nauseous and has to lie down in a dark, quiet room" (Tr. 22; see also Tr. 51), and that "since the Botox injections, she has 10 or 11 bad days, and the migraines last two to three hours" (Tr. 22: see also Tr. 53). However, the ALJ ultimately found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms [we]re not entirely consistent with the medical evidence and other evidence in the record" (Tr. 23), and supported that finding with the following reasoned analysis:

> [Plaintiff] has had migraines and headaches . . . since the [motor vehicle] accident in 2013. She stated her headaches have remained the same since the accident; however, she did experience improvement with occipital nerve blocks and cervical trigger point injections for a time. She also noted improvement with gabapentin. Furthermore, she was able to work for two years after her accident with the headaches. She is currently receiving benefit from Botox injections, with a reduction in the

12

> number, length, and severity of headaches. She is able
> to perform a wide variety of activities. The [ALJ] finds
> that the combination of [Plaintiff]'s impairments limit
> her to a reduced range of medium work, with postural,
> <u>environmental</u>, and mental limitations, <u>to include an
> allowance for time off task.</u>

(Tr. 29 (emphasis added) (internal citations omitted).) Plaintiff,
however, challenges all three of the bases relied upon by the ALJ
to discount Plaintiff's subjective symptom reporting. (<u>See</u> Docket
Entry 12 at 6 (citing Tr. 29).)

Plaintiff first takes issue with the ALJ's finding that
Plaintiff's headaches improved with treatment. (<u>See</u> <u>id.</u>)
According to Plaintiff, although "Botox injections did help her
migraine headaches significantly[,] . . . she was still
experiencing four 'bad headaches' in a month's time" and her
treatment "did not restore [her] ability to work." (<u>Id.</u> (quoting
Tr. 536).) Plaintiff did not point to any record evidence beyond
her own "bad headaches" statement to support her contention and
thus makes the circular argument that the ALJ should not have
discounted her subjective reports of headache symptoms on the basis
of medical improvement, because the ALJ should have fully credited
her post-Botox subjective headache complaints. (<u>Id.</u>) That
argument provides no basis to fault the ALJ's reliance on medical
improvement to discount Plaintiff's subjective reports of headache
symptoms. <u>See</u> <u>Squires v. Colvin</u>, No. 1:16CV190, 2017 WL 354271, at
*5 (M.D.N.C. Jan. 24, 2017) (unpublished) (noting that an "ALJ

13

labors under no obligation to accept [the p]laintiff's subjective complaints 'at face value'" (quoting <u>Ramos-Rodriguez v. Commissioner of Soc. Sec.</u>, Civ. No. 11-1323, 2012 WL 2120027, at *3 (D.P.R. June 11, 2012) (unpublished))), <u>recommendation adopted</u>, slip op. (M.D.N.C. Mar. 6, 2017) (Schroeder, J.).

Next, Plaintiff argues that the "'wide range of activities'" performed by Plaintiff, as relied upon by the ALJ, "do[es] not indicate that [Plaintiff] would be able to work." (Docket Entry 12 at 6 (quoting Tr. 29).) More specifically, Plaintiff maintains that her church attendance, visits with her brother, and care of tomato plants does not conflict with her "also experiencing multiple days of debilitating headache pain a month," noting that "an individual does not have to be bedridden everyday in order to receive disability benefits." (<u>Id.</u> (citing <u>Totten v. Califano</u>, 624 F.2d 10, 11 (4th Cir. 1980)).) Plaintiff's argument fails, because the ALJ relied on a much "wide[r] variety of activities" (Tr. 29) than Plaintiff describes. Indeed, the ALJ noted that Plaintiff performed "a wide variety of activities requiring significant cognitive functioning," including "read[ing] murder mysteries and devotionals, do[ing] word searches, play[ing] computer games, go[ing] on Facebook, driv[ing], and do[ing] household chores and yard work." (Tr. 28.) The ability to engage in those activities conflicts with Plaintiff's descriptions of near daily debilitating headaches lasting hours that require her to lie down in a dark,

14

quiet room (see Tr. 51-53) and thus Plaintiff has not shown error in the ALJ's reliance upon them to discount her complaints of headache symptoms.

Plaintiff also contends that the ALJ should not have relied upon Plaintiff's ability to continue working after her 2013 motor vehicle accident to discount her subjective headache symptoms, because "her failed attempt to continue at her job" occurred during "a period of improvement before [her] alleged onset date" and thus "does not demonstrate that her headaches did not become debilitating later as her condition worsened." (Docket Entry 12 at 7.) The record reflects that Plaintiff continued working until about December 4, 2015 (see Tr. 48, 228), just over one month after the onset date of disability (or just over two months after her original alleged onset date of September 30, 2015 (see Tr. 186, 216)). Thus, the ALJ's reliance on Plaintiff's ability to continue working for such a short period of time after the onset date does not carry much probative force to establish the severity of Plaintiff's headaches during the relevant period in this case. However, if such reliance constituted error by the ALJ, that error remains harmless because, as discussed above, the ALJ relied on other, more compelling grounds for discounting Plaintiff's subjective reports of headache symptoms. See Johnson v. Commissioner of Soc. Sec., 535 F. App'x 498, 507 (6th Cir. 2013) ("[E]ven if an ALJ's adverse credibility determination is based

15

partially on invalid reasons, harmless error analysis applies to the determination, and the ALJ's decision will be upheld as long as substantial evidence remains to support it."); Propst v. Colvin, No. 1:16CV82, 2016 WL 5107093, at *8 (M.D.N.C. Sept. 20, 2016) (unpublished) ("Given that the ALJ relied on multiple permissible factors in reaching the decision to discount Plaintiff's [subjective complaints], any failure by the ALJ to expressly discuss Plaintiff's work history amounts to harmless error."), recommendation adopted, slip op. (M.D.N.C. Oct. 31, 2016) (Biggs, J.); see also Fisher v. Bowen, 869 F.2d 1055, 1057 (7th Cir. 1989) (observing that "[n]o principle of administrative law or common sense requires [a court] to remand a case in quest of a perfect opinion [by an ALJ] unless there is reason to believe that the remand might lead to a different result").

Simply put, Plaintiff's first assignment of error fails as a matter of law.

### 2. Conflicts Between State Agency Psychological Consultants' Opinions and RFC

Plaintiff next asserts that "[t]he ALJ failed to address the material conflicts between the opinions of the [s]tate [a]gency physicians and [the] RFC determination." (Docket Entry 12 at 8 (bold font and single-spacing omitted).) In particular, Plaintiff points out that the ALJ accorded "'substantial weight'" to the opinions of the state agency psychological consultants (id.

(quoting Tr. 30)), who each "found that while [Plaintiff] would not be significantly limited in her ability to carry out very <u>short</u> and simple instructions, she would be limited in her ability to carry out <u>detailed</u> instructions" (<u>id.</u> at 8-9 (emphasis added) (citing 86, 102 (finding Plaintiff "[m]oderately limited" in that ability))). Plaintiff emphasizes that all three jobs adopted by the ALJ at step five of the SEP involve a Reasoning Development Level ("RDL") of 2 (<u>id.</u> at 9 (citing Tr. 32, <u>Dictionary of Occupational Titles</u> ("<u>DOT</u>"), No. 920.587-018 ("Packager, Hand"), 1991 WL 687916 (G.P.O. 4th ed. rev. 1991), <u>DOT</u>, No. 922.687-058 ("Laborer, Stores"), 1991 WL 688132, and <u>DOT</u>, No. 369.687-018 ("Folder"), 1991 WL 673072)), which requires the ability to "understand and carry out <u>detailed</u> instructions" (<u>id.</u> (citing <u>DOT</u>, App'x C ("Components of the Definition Trailer"), § III ("General Educational Development"), 1991 WL 688702) (emphasis added)).[6] According to Plaintiff, "[b]ecause the ALJ did not explain the inconsistency between his agreement with the opinions of the [s]tate [a]gency psychological consultants and his failure to place a limitation on [Plaintiff's] ability to receive <u>detailed</u> . . . instructions in the RFC, his decision must be vacated as th[at] inconsistency is material[ - i]f restricted to 'short' . . . instructions as the consultants found,

_____

[6] Plaintiff mis-cites the Laundry Folder job as <u>DOT</u> job number "237.367-014" (Docket Entry 12 at 9), which actually corresponds to the "Call Out Operator" job in the <u>DOT</u>, <u>see</u> <u>DOT</u>, No. 237.367-014 ("Call Out Operator"), 1991 WL 672186.

17

[Plaintiff] would be unable to perform the [RDL 2] jobs cited by the ALJ at [s]tep [f]ive." (Id. at 10 (emphasis added) (citing Tr. 32).) Plaintiff's contentions fall short.

Plaintiff's arguments gloss over the difference between having some degree of limitation in her ability to perform a work-related activity and having no useful ability to perform that activity. Here, the state agency psychological consultants rated Plaintiff as "[m]oderately limited" in her ability to understand, remember, and carry out detailed instructions (Tr. 86, 102 (emphasis added)), which means that her ability to handle detailed instructions "[wa]s impaired," Program Operations Manual System ("POMS"), § DI 24510.063B.2 (bold font omitted), but not that she entirely lacked that capacity. Ultimately, and consistently with the POMS' definition of "moderately limited," the consultants did not include a restriction to short instructions in Plaintiff's mental RFC, finding instead that she remained able to handle simple, routine, repetitive tasks ("SRRTs"). (See Tr. 83, 88, 98, 103.) In the ALJ's decision, he likewise found that Plaintiff could perform SRRTs (see Tr. 21-22) and thus no inconsistency exists between the ALJ's assignment of "substantial weight" to the consultants' opinions and the mental RFC. Furthermore, because the ALJ properly harmonized his mental RFC with that of the consultants by omitting a restriction to short instructions (see Tr. 21-22, 83, 88, 98, 102), Plaintiff has not shown that she remained "unable to perform

18

the [RDL 2] jobs cited by the ALJ at [s]tep [f]ive" (Docket Entry 12 at 10). See Lawrence v. Saul, 941 F.3d 140, 143 (4th Cir. 2019) (finding no inconsistency existed between the plaintiff's mental RFC limiting him to SRRTs and "[RDL] 2's notions of 'detailed but uninvolved . . . instructions and tasks,'" (quoting DOT, App'x C, 1991 WL 688702)); see also Thomas v. Berryhill, 916 F.3d 307, 314 (4th Cir. 2019) (deeming apparent conflict to exist between restriction to short, simple instructions and RDL 2's required ability to handle detailed but uninvolved instructions).

In sum, Plaintiff's second issue on review fails to warrant reversal or remand.

### 3. NCRS Disability Determination

In Plaintiff's third and final assignment of error, she asserts that "[t]he ALJ failed to adequately evaluate the long-term disability decision of the [NCRS]." (See Docket Entry 12 at 11 (bold font and single-spacing omitted).) In that regard, Plaintiff highlights that she "was preliminarily approved for long-term disability benefits on March 2, 2016" (id. (citing Tr. 217)) and, "on January 17, 2017, she was finally approved for long-term disability benefits with an effective date of February 2, 2017" (id. (citing Tr. 219)). Plaintiff faults the ALJ for "say[ing] nothing more about the [NCRS disability] decision other than it was considered and that disability is an issue[] reserved to the Commissioner." (Id. (citing Tr. 30).) Plaintiff contends that the

19

ALJ's evaluation of the NCRS decision violated Fourth Circuit precedent and necessitates remand.  (See id. at 11-13 (citing DeLoatche v. Heckler, 715 F.2d 148, 150 (4th Cir. 1983), Gordon v. Schweiker, 725 F.2d 231, 236 (4th Cir. 1984), Bird v. Commissioner, 699 F.3d 337, 343 (4th Cir. 2012), and Woods v. Berryhill, 888 F.3d 686, 692-93 (4th Cir. 2018)).)  Plaintiff's arguments do not establish an entitlement to relief.

As a threshold matter, Plaintiff has not shown why the relevant holdings in Bird and Woods should apply to the facts of this case.  In Bird, the Fourth Circuit addressed for the first time the "weight that the SSA must afford to a VA disability rating."  Bird, 699 F.3d at 343 (emphasis added).  The court emphasized the similarities between the evaluation of disability by the VA and by the SSA:

> [B]oth the VA and Social Security programs serve the same governmental purpose of providing benefits to persons unable to work because of a serious disability.  "Both programs evaluate a claimant's ability to perform full-time work in the national economy on a sustained and continuing basis; both focus on analyzing a claimant's functional limitations; and both require claimants to present extensive medical documentation in support of their claims."

Id. (quoting McCartey v. Massanari, 298 F.3d 1072, 1076 (9th Cir. 2002)) (emphasis added) (internal citation omitted).

After reviewing the "varying degrees of evidentiary significance" other circuits afford VA disability ratings, the Fourth Circuit held as follows:

20

> The VA rating decision reached in [the plaintiff's] case
> resulted from an evaluation of the same condition and the
> same underlying evidence that was relevant to the
> decision facing the SSA. Like the VA, the SSA was
> required to undertake a comprehensive evaluation of [the
> plaintiff's] medical condition. <u>Because the purpose and
> evaluation methodology of both programs are closely
> related, a disability rating by one of the two agencies
> is highly relevant to the disability determination of the
> other agency</u>. Thus, we hold that, in making a disability
> determination, the SSA must give <u>substantial weight to a
> VA disability rating</u>. However, because the SSA employs
> its own standards for evaluating a claimant's alleged
> disability, and because the effective date of coverage
> for a claimant's disability under the two programs likely
> will vary, an ALJ may give less weight to a VA disability
> rating when the record before the ALJ <u>clearly
> demonstrates</u> that such a deviation is appropriate.

<u>Bird</u>, 699 F.3d at 343 (emphasis added).

The Fourth Circuit thereafter extended the relevant holding in

<u>Bird</u> to a case involving a <u>North Carolina Department of Health and

Human Services ("NCDHHS") disability determination</u>, again taking

care to emphasize the similarities between disability analysis by

the SSA and by the NCDHHS:

> We see no reason why th[e] logic [in <u>Bird</u>] does not also
> apply to NCDHHS disability decisions. [<u>Bird</u>, 699 F.3d at
> 343.] Both NCDHHS and Social Security disability
> insurance benefits "serve the same governmental purpose
> of providing benefits to persons unable to work because
> of a serious disability." <u>Id.</u> (describing purpose of
> Social Security disability insurance benefits); <u>see</u>
> NCDHHS, Aged, Blind, and Disabled Medicaid Manual § 200
> (2008) (defining "Medicaid" as "A program to assist
> eligible . . . disabled [individuals] . . . with the cost
> of medical care"). Moreover, NCDHHS defines "Medicaid to
> the Disabled" as a "program of medical assistance for
> individuals under age 65 who meet *Social Security's
> definition of disability*." <u>Id.</u> (emphasis added); <u>see
> also</u> <u>id.</u> § 2525. As a result, a "<u>person who receives
> Social Security based on disability meets the disability</u>

21

requirement for Medicaid," although he or she must still
"apply for Medicaid and must meet all other eligibility
requirements." Id. § 2525. "Because the purpose and
evaluation methodology of both programs are closely
related, . . . in making a disability determination, the
SSA must give substantial weight to" an NCDHHS disability
decision. Bird, 699 F.3d at 343.

Woods v. Berryhill, 888 F.3d 686, 692 (4th Cir. 2018) (underscoring

emphasis added). The Fourth Circuit also clarified "what an ALJ

must do" to clearly demonstrate the appropriateness of a deviation

from Bird's substantial weight standard:

> We now conclude, consistent with our sister circuits,
> that in order to demonstrate that it is "appropriate" to
> accord less than "substantial weight" to an NCDHHS
> disability decision, an ALJ must give "persuasive,
> specific, valid reasons for doing so that are supported
> by the record."

Woods, 888 F.3d at 692 (quoting McCartey, 298 F.3d at 1076)

(emphasis added).

In contrast to the VA decision and NCDHHS decision considered

in Bird and Woods, respectively, the NCRS disability decision

relied on by Plaintiff consists merely of letters dated March 2,

2016, and January 17, 2017, advising Plaintiff of her approval for

"preliminary" (i.e., "for the remainder of the short-term period")

and full long-term disability benefits, as well as the terms and

conditions of those benefits. (Tr. 217, 219.) Those letters do

not identify the conditions the NCRS found disabling, describe the

standards used to determine disability, list the evidence

considered in making the decisions, or provide any analysis

22

supporting the decisions. (Id.) Under such circumstances, the Court cannot determine whether "the purpose and evaluation methodology" of the NCRS and the SSA are sufficiently "closely related" to warrant the "substantial weight" standard of <u>Bird</u> and <u>Woods</u>. <u>Bird</u>, 699 F.3d at 343; <u>Woods</u>, 888 F.3d at 692.

In the absence of controlling authority extending <u>Bird</u> and <u>Woods</u> to this context, 20 C.F.R. § 404.1504 and Social Security Ruling 06-03p, <u>Titles II and XVI: Considering Opinions and Other Evidence from Sources Who Are Not "Acceptable Medical Sources" in Disability Claims; Considering Decisions on Disability by Other Governmental and Nongovernmental Agencies</u>, 2006 WL 2329939, at *6-7 (Aug. 9, 2006) ("SSR 06-03p") provide the applicable standards for an ALJ analyzing a governmental disability decision. Section 404.1504 states that "[a] decision by any . . . governmental agency about whether [a claimant is] disabled or blind is based on its rules and is not [the SSA's] decision about whether [a claimant is] disabled or blind," that the SSA "must make a disability or blindness determination based on social security law," and that "a determination made by another agency that [a claimant is] disabled or blind is not binding on [the SSA]." 20 C.F.R. § 404.1504. SSR 06-03p provides that "evidence of a disability decision by another governmental . . . agency cannot be ignored and must be <u>considered</u>," and that "the [ALJ] should <u>explain</u> the consideration

23

given to these decisions in the notice of decision." SSR 06-03p, 2006 WL 2329939, at *6-7 (emphasis added).[7]

In evaluating the NCRS disability decision, the ALJ stated as follows:

> The [ALJ] <u>considered</u> [Plaintiff's] receipt of short-term and long-term disability. However, <u>the ultimate determination of disability is reserved to the []</u> <u>Commissioner</u>. Evidence regarding [Plaintiff's] receipt of short-term and long-term disability has been <u>considered</u> where included in the evidence of record.

(Tr. 30 (emphasis added).) That analysis shows that the ALJ <u>considered</u> the NCRS disability decisions but, ordinarily and standing alone, would not sufficiently reflect that the ALJ <u>explained</u> the consideration he gave to those decisions. In the context of an disability decision by another agency which contains underlying analysis, allowing the ALJ's statement that a "determination of disability is reserved to the [] Commissioner" to satisfy SSR 06-03p's explanation requirement would render that requirement superfluous, as that ground would apply to all

---

[7] For claims filed on or after March 27, 2017, the SSA has rescinded SSR 06-03p and amended 20 C.F.R. § 404.1504. <u>See</u> 82 Fed. Reg. 5844 (Jan. 18, 2017); 82 Fed. Reg. 15263-01 (Mar. 27, 2017). The new regulation states that the SSA "will not provide any analysis in [its] determination or decision about a decision made by any other governmental agency or a nongovernmental entity about whether you are disabled, blind, employable, or entitled to any benefits," 20 C.F.R. § 404.1504. In rescinding SSR 06-03p, the SSA noted that, for claims filed on or after March 27, 2017, ALJs "will not provide any articulation about their consideration of decisions from other governmental agencies and nongovernmental entities because this evidence is inherently neither valuable nor persuasive." 82 Fed. Reg. 15263-01. Because Plaintiff filed her claim for DIB in 2015 (see Tr. 186-87), this Recommendation will apply SSR 06-03p and the prior version of Section 404.1504 to Plaintiff's contentions in her third assignment of error.

disability decisions by other agencies. However, as discussed above, the NCRS disability decisions here do not identify the conditions the NCRS found disabling, describe the standards used to determine disability, list the evidence considered in making the decisions, or provide any analysis supporting the decisions. (See Tr. 217, 219.) Thus, the ALJ could not have provided any further explanation of the consideration he gave to the NCRS disability decisions.

Moreover, the first two pages of the exhibit containing the NCRS disability decisions consist of an NCRS form entitled "Reporting Earnings for Short-Term Disability Benefits and Medical Report for Eligibility Review" (Tr. 215-16) on which Plaintiff's treating neuropsychologist, Dr. Kristine M. Herfkens, provided a disability opinion dated December 1, 2015 (see Tr. 216). Dr. Herfkens indicated that "[c]ognitive impairment due to brain injury" caused Plaintiff to suffer "[p]oor memory [and] concentration, difficulty multitasking, [and] slow thinking speed," that disabled her as of September 30, 2015. (Id.) The fact that the NCRS issued its approval of preliminary long-term disability benefits just three months after Dr. Herfkens's opinion, as well as the absence of any other medical evidence in the NCRS exhibit (see Tr. 215-23), strongly support the inference that Dr. Herfkens's opinion formed a substantial part of the rationale for the NCRS disability decisions. The ALJ assigned "substantial weight" to Dr.

Herfkens's opinions that Plaintiff "had a cognitive impairment due to brain injury," and that "[s]he had poor memory and concentration, difficulty multitasking, and slow thinking speed," but discounted Dr. Herfkens's opinion that Plaintiff's cognitive disorder <u>disabled</u> her as of September 30, 2015, because "whether a claimant is disabled is an issue reserved to the Commissioner of Social Security." (Tr. 29.) Plaintiff ascribes no error to that evaluation. (See Docket Entry 12.)[8] The ALJ's analysis thus indicates that he 1) "considered" the NCRS disability decisions; and 2) to the extent he could, "explained the consideration given to th[o]se decisions in the notice of decision," SSR 06-03p, 2006 WL 2329939, at *6-7. (See Tr. 30.) The applicable regulation and SSR 06-03p require nothing more.

In short, as Plaintiff has not shown reversible error in the ALJ's consideration of the NCRS disability decision, Plaintiff's third assignment of error thus misses the mark.

---

[8] The ALJ also evaluated and weighed a later opinion from Dr. Herfkens dated February 26, 2016, in which Dr. Herfkens indicated that Plaintiff "had to reduce her work responsibilities and workload to continue working," "continued to struggle with severe headaches and fatigue," and "could not adequately manage her job," and that Dr. Herfkens "encouraged [Plaintiff] to leave work, because [Dr. Herfkens] believed [Plaintiff] was unable to do her job, and [Dr. Herfkens] considered [Plaintiff] disabled." (Tr. 29.) The ALJ accorded "limited weight to Dr. Herfkens'[s] opinion[] as . . . not consistent with the overall record." (Id.) In that regard, the ALJ noted that Plaintiff's "headaches ha[d] improved with treatment," that Plaintiff "testified she [wa]s able to do a wide variety of activities," and that "whether a claimant can perform a particular job or is disabled is an issue reserved to the Commissioner." (Id.) Plaintiff did not assign error to that analysis either. (See Docket Entry 12.)

## III. CONCLUSION

Plaintiff has not established grounds for relief.

**IT IS THEREFORE RECOMMENDED** that the Commissioner's decision finding no disability be affirmed, that Plaintiff's Motion for Judgment on the Pleadings (Docket Entry 11) be denied, that Defendant's Motion for Judgment on the Pleadings (Docket Entry 15) be granted, and that judgment be entered dismissing this action.


                              /s/ L. Patrick Auld
                              **L. Patrick Auld**
                              **United States Magistrate Judge**


June 22, 2020